1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   United States of America,              )      06-00139MJ
                                           )
10              Plaintiff,                  )      **ORDER**
                                           )
11  vs.                                    )
                                           )
12                                         )
    Manuel Valdez-Gomez,                   )
13                                         )
                Defendant.                 )
14                                         )
                                           )
15  _____

16          The Government seeks the detention of Defendant Manuel Valdez-Gomez

17  ("Valdez") upon the grounds that he is a serious flight risk and that no release condition or

18  combination of conditions exist that would reasonably assure his appearances at future court

19  proceedings.

20          After considering all the evidence and counsels' proffers, the arguments of both

21  counsel, the controlling and persuasive authorities on the issues *sub judice* and all the factors

22  set forth in 18 U.S.C. §3142(g), the Court **FINDS** that the Government has proven by a

23  preponderance of the evidence that Valdez is a serious flight risk and that no combination

24  of conditions exist that would reasonably assure his appearances at future court proceedings.

25

26          **NATURE AND CIRCUMSTANCES OF THE CRIMES CHARGED**

27          The Government asserts that the subject charges arise out of Valdez' alleged

28

1   leadership role of an alien smuggling operation by illegally bringing numerous aliens into

2   the United States through Arizona for the purpose of his financial gain over an eight-year

3   period. The March 15, 2006 multi-count indictment was returned in the United States District

4   Court, Northern District of Ohio, Eastern Division against 24 defendants, many of whom are

5   Valdez' immediate family members. The twenty-three count indictment alleges the following

6   crimes against Valdez: (1) Conspiracy to Smuggle Aliens into and within the United States

7   (Count 1) in violation of Title 8 U.S.C. § 1324(a)(1)(A)(v)(I), a class C felony that carries

8   a maximum possible punishment of 20 years in prison; (2) Conspiracy to Commit Mail Fraud

9   etc (Count 3) in violation of Title 18 U.S.C. § 371, a class D felony that carries a maximum

10  possible punishment of 5 years in prison; (3) Aiding and Abetting the Bringing of an Alien

11  into the United States (Counts 5, 6, 7 and 8) in violation of Title 8 U.S.C. § 1324(a)(2) and

12  Title 18 U.S.C. § 2, class C felonies that carry maximum possible punishments of 10 years

13  in prison on each count for a first or second violation; (4) Aiding and Abetting Mail Fraud

14  (Count 14) in violation of Title 18 U.S.C. § 1341 and § 2, a class C felony that carries a

15  maximum possible punishment of 20 years in prison; and (5) Aiding and Abetting the

16  Structuring of Money Transactions (Count 16) in violation of Title 31 U.S.C. § 5324 and §

17  2, a class C felony that carries a maximum possible punishment of 10 years in prison.

18  Although these are not crimes of violence, are not drug trafficking offenses that create a

19  rebuttable presumption of detention and do not involve the use or threatened use of firearms,

20  if convicted of all the foregoing crimes which span a period of years, Valdez will likely

21  spend most, if not all, of his life in prison.

22          The Government argues that Valdez is a serious flight risk and that Valdez is

23  motivated to flee the United States because, if convicted, Valdez would be sentenced to a

24  significant prison term despite the absence of a criminal record.  The Ninth Circuit permits

25  the district court to consider possible punishment on Valdez' state of mind as a motivational

26  factor to flee the United States.  In <u>United States v. Townsend</u>, 897 F.2d 989 (9th Cir. 1990).

27          ". . . The defendants are charged with multiple counts, and it is reasonable, from
            their perspective, to look at the potential maximum sentences they face if they
28          were found guilty on each count and sentenced consecutively on each count. . .

1  |  Facing the much graver penalties possible under the present indictment, the
2  |  defendants have an even greater incentive to consider flight.. ."
*Id.* at 995.

3  |  Valdez is not a U.S. citizen; he is a Lawful Permanent Resident and has been

4  |  since 1981. An immigration detainer has been lodged against him.  The Government

5  |  proffers that if Valdez is convicted of the charged offenses, each likely an  "aggravated

6  |  felony" under immigration law, after completion of his prison sentences, Valdez would be

7  |  deported from the United States without any discretion in the immigration judge to allow

8  |  Valdez to lawfully remain in the United States. See, Title 8 U.S.C. § 1227(a)(2)(A) (iii); 8

9  |  U.S.C. § 1101(a)(43)(K)(iii).

10  |  Valdez has very strong ties to the Republic of Mexico. The March 29, 2006

11  |  PTS report confirms that Valdez has a romantic relationship with a woman named Lucy

12  |  in Nogales, Mexico with whom they have two biological children. He admits to

13  |  frequently traveling to Mexico two times per month to see this other family. His parents

14  |  currently live in Guanajuato, Mexico. According to the Government, Valdez

15  |  constructively owns a hotel in Nogales, Mexico, supposedly worth $ 2 million dollars

16  |  (US), which is allegedly managed by Lucy. It is unlikely this property will be forfeited to

17  |  the United States because it is located in Mexico. Additionally, it is likely that Valdez has

18  |  access to large amounts of cash stored in various unknown locations because the ICE

19  |  agents recently executing several search warrants in this case discovered over $60,000 in

20  |  cash hidden in several residences allegedly connected to Valdez and this alien smuggling

21  |  organization.

22  |  This detention factor strongly weighs in favor of Valdez' detention.

23  |

24  |  **<u>WEIGHT OF THE EVIDENCE AGAINST DEFENDANT</u>**

25  |  Of all the detention factors for the Court to consider, the Ninth Circuit has

26  |  stated that the weight of the evidence is the least important of the various factors. <u>United

27  |  States v. Motamedi</u>, 767 F.2d 1403, 1407 (9th Cir. 1985); <u>United States v. Honeyman</u>, 470

28  |  F.2d 473, 474 (9th Cir.1972).

1       The Government proffers that it has a very strong case of Valdez' guilt. There

2   are unidentified cooperating sources who have actively participated in this alien

3   smuggling organization and, at least, two co-Defendants so far, Yolanda Sosa and Patricia

4   Hernandez, who directly implicate Valdez as the leader of this illegal alien smuggling

5   operation.

6       This detention factor weighs in favor of Valdez' detention.

7

8                    **HISTORY AND CHARACTERISTICS OF DEFENDANT**

9       Valdez, age 55, has substantial ties to the Phoenix community and District of

10  Arizona.  He has been living in Arizona for the last 24 years and at his residence of 5927 W.

11  Avalon, Phoenix, since 1996.  Although estranged from his wife, Aurora, who lives in the

12  community residence with Valdez, they sleep in separate bedrooms.  He has many family

13  members, many of whom were allegedly involved in this alien smuggling organization, and

14  friends living in the Phoenix area that tie him to this community.  As an alien lawfully

15  residing in the United States, Valdez may legally work in the United States.  Valdez reports

16  he is employed as the owner/operator of Rebelde Auto Sales and Repair in Phoenix for the

17  last two years. He professes to be an auto mechanic and body repairman by trade. He owns

18  numerous properties in the Phoenix area, although most, if not all, are subject to forfeiture

19  in this case. Valdez has no prior criminal record of any kind.

20  .       These detention factors weigh in favor of Valdez' release from custody.

21

22          **NATURE AND SERIOUSNESS OF THE DANGER TO RELEASE DEFENDANT**

23      Valdez does not have a criminal history or record in the United States.  The Court

24  is provided no information that Valdez has an illicit drug or alcohol abuse history. Although

25  multiple weapons, including assault rifles and 100-round magazines, were seized in the

26  recent house searches related to this case, there is no evidence that Valdez or his organization

27  have used weapons in this alien smuggling operation.

28      These detention factors weigh in favor of Valdez release from custody.

1

**<u>DISCUSSION</u>**

2       The Court is mindful that "only in rare circumstances should release be denied,"

3 <u>Sellers v. United States</u>, 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (1968); <u>United States v. Motamedi</u>,

4 767 F.2d at 1407, and "doubts regarding the propriety of release should be resolved in favor

5 of the defendant." <u>Herzog v. United States</u>, 75 S.Ct. 349, 351, 99 L.Ed. 1299 (1955); <u>United</u>

6 <u>States v. McGill</u>, 604 F.2d 1252, 1255 (9th Cir.1979), <u>cert. denied</u>, 444 U.S. 1035, 100 S.Ct.

7 708, 62 L.Ed.2d 671 (1980).  Additionally, the Bail Reform Act also mandates release of a

8 person facing trial under "the least restrictive" condition or combination of conditions that

9 will reasonably assure the appearance of the person as required. 18 U.S.C. § 3142(c)(2)

10 (1984); <u>United States v. Motamedi</u>, 767 F.2d at1407("we are not unmindful of the

11 presumption of innocence and its corollary that the right to bail should be denied only for the

12 strongest of reasons) (citing <u>Truong Dinh Hung v. United States</u>, 439 U.S. 1326, 1329

13 (1978)).  Alienage, however, is a factor which may be considered by the trial court but, by

14 itself, it is not determinative. <u>Motamedi</u>, 767 F.2d at 1408.

15       Opportunity to flee alone is not enough to justify detention as the Bail Reform

16 Act does not seek ironclad guarantees. <u>United States v. Himler</u>, 797 F.2d 156 (3rd Cir. 1986).

17 The requirement that the conditions of release "reasonably assure" a defendant's appearance

18 cannot be read to require guarantees against flight. <u>United States v. Chen</u>, 820 F. Supp. 1205,

19 1208 (N.D. Cal. 1992).

20       The Government's burden of proof for purposes of detention is not trivial but as

21 to flight, as compared to the higher clear and convincing standard for detention on the basis

22 of danger to the community, it is only by a preponderance of the evidence standard. The

23 Government must point to more than the indictment that a defendant might flee the United

24 States to avoid incarceration. The Bail Reform Act requires the Government to prove by a

25 preponderance of the evidence that the Valdez poses a "serious" flight risk. 18

26 U.S.C. §3142(f)(2)(A)("a serious risk that such person will flee;"); <u>United States v. Gebro</u>,

27 948 F.2d 1118, 1121 (9th Cir. 1991).  It has met its burden as to this Defendant.

28

1         Based upon a balancing of the aforesaid detention factors and all the evidence and

2 proffers presented at the subject detention hearing,

3         The Court **FINDS** that the Government has sustained its burden of proof by a

4 preponderance of the evidence that Valdez is a serious flight risk and that no condition or

5 combination of release conditions would reasonably assure Valdez' appearances at future

6 court proceedings were Valdez released from custody.

7         Accordingly,

8         **IT IS ORDERED** that the Government's oral motion for detention of Manuel

9 Valdez-Gomez is **GRANTED**.

10         DATED this 30th day of March, 2006.

11

12

13                     Lawrence O. Anderson
                    United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28